UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GUADALUPE DIAZ, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:05-CV-2084-G |
| OFFICER ROLANDO CARBALLO and ) | |
| OFFICER DON ALEXANDER, ) | **ECF** |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants, Rolando Carballo ("Carballo") and Don Alexander ("Alexander") ("the defendants"), for partial summary judgment and the defendants' objections to the plaintiffs' summary judgment evidence. For the reasons set forth below, the defendants' objections are sustained and their motions for partial summary judgment are granted.

### I. BACKGROUND

The plaintiffs in this action, Guadalupe Diaz ("Diaz") and Eva Diaz, brought this suit against Carballo and Alexander, pursuant to 42 U.S.C. § 1983, alleging

violations of Diaz's constitutional rights under the Fourth Amendment, specifically that the officers' arrest was wrongful and that Carballo used excessive force. *See* Plaintiffs' Second Amended Original Complaint ("Complaint") ¶ 1. Eva Diaz, the plaintiff's spouse, seeks compensation for loss of consortium.[1] *Id.*

The defendants seek partial summary judgment on Diaz's wrongful arrest claim, arguing in the alternative that there was probable cause under the circumstances to support the arrest, or, if the court finds no probable cause, that the defendants are entitled to qualified immunity. *See generally* Defendant Don Alexander's Motion for Partial Summary Judgment and Defendant Rolando Carballo's Motion for Partial Summary Judgment (collectively, "Defendants' Motions").[2]

### A. The Plaintiffs' Version of the Facts

According to Diaz, early in the morning on October 23, 2003, Diaz was "at a house he had recently purchased." *See* Complaint ¶ 6. After leaving the house, Diaz "walked a short distance down a public alley on his way to his truck which he had parked a short distance away." *Id*. When Diaz approached his truck, "he heard

---

[1] The defendants seek summary judgment only as to one of Diaz's claims; Eva Diaz's claim for loss of consortium is not challenged by the defendants in their motions.

[2] While Diaz's claims against the individual defendants are different, both motions for partial summary judgment rely on identical arguments. Consequently, they will be referred to together throughout this discussion. Any differences between the two motions will be noted where relevant.

footsteps approaching and fearing that he was about to be robbed, opened the drivers side door of his truck, and with his left hand, secreted his wallet in the storage compartment of the rear drivers side door." *Id*. Diaz then avers that "[a]s he stood up and prepared to enter his truck he was shot by Defendant Carballo." *Id.* Diaz then drove to the hospital where he received medical treatment. *Id.* ¶ 8. Diaz contends that officers Carballo and Alexander conspired together and concocted a false story in order to arrest Diaz for the crime of assaulting a police officer. *Id.* ¶ 9. Diaz was arrested while in the hospital. *Id*. ¶ 10.

### B. The Defendants' Version of the Facts

The defendants present a much different version of the facts. Officers Carballo and Alexander allege that around 2:00 a.m. on October 26, 2003, they were dispatched, after a 9-1-1 call, to investigate a suspected prowler. *See* Brief in Support of Carballo's Motion for Partial Summary Judgment ("Carballo's Brief") at 2; Brief in Support of Alexander's Motion for Partial Summary Judgment ("Alexander's Brief") at 2. The call was made by Gilbert Cipriano ("Cipriano"), the owner of a house adjacent to a property Diaz had recently purchased. *Id.* The officers arrived on the scene fifteen minutes later and spoke with Cipriano, who explained that "someone was in the back yard area and refused to leave." *Id.* During their investigation, Carballo "observed a person, later identified as Diaz, lurking along the property line adjoining the alley. Diaz then ran away from Carballo and refused to surrender as

commanded by Carballo. Carballo followed the suspect to McVey street . . . where a pickup truck was parked." Carballo's Brief at 2. Carballo insists that Diaz ignored his commands to stop and entered his truck, whereupon Carballo and Diaz "engaged in a physical struggle to extract Diaz from the truck." *Id.* at 3. While grabbing Carballo, Diaz allegedly accelerated in the truck, dragging Carballo, at which point Carballo drew his service pistol and fired one shot, hitting Diaz in the neck and shoulder. *Id.* Diaz drove away to the hospital, where he was later placed under arrest for aggravated assault on a public servant. *Id.*

On the basis of these contested facts, Diaz alleges that Alexander and Carballo violated 42 U.S.C. § 1983 by denying Diaz his rights under the Fourth Amendment to the United States Constitution. *See* Plaintiffs' Complaint ¶ 1. Specifically, Diaz alleges that the actions of the defendants in procuring Diaz's arrest deprived Diaz of his right under the Fourth Amendment to be free from an unreasonable arrest. *Id*. ¶ 13.

## II. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). The disposition of a case through

summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986). While all of the evidence must be viewed in a light most favorable to the nonmovants, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movants make the necessary showing by informing the court of the basis of their motions and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movants make the required showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this

burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovants cannot survive a motion for summary judgment, however, by merely resting on the allegations in their pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

B. <u>Summary Judgment Evidence</u>

1. *Evidentiary Standard on Motion for Summary Judgment*

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). See *Celotex*, 477 U.S. at 324. While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements. See *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit were "incompetent summary judgment evidence"). Thus, for example, while an affidavit has limited admissibility at trial, it is sufficient evidence to support or defeat a motion for summary judgment even

though inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court. See *id.*

      2. *Defendants' Objections to the Plaintiffs' Summary Judgment Evidence*

Together with the plaintiffs' response to the defendants' motions for partial summary judgment, the plaintiffs filed an appendix consisting of two medical reports, an affidavit from the plaintiff Diaz, and excerpts from the deposition of Carballo. *See* Appendix to Plaintiffs [sic] Response to Defendants [sic] Motion for Summary Judgment ("Plaintiffs' Appendix"). The defendants have objected to each of the documents contained in the appendix, and the plaintiffs have not responded to the defendants' objections.

      a. <u>Medical Reports of Dr. Marple and Dr. Tchorz</u>

The defendants object to the plaintiffs' incorporation of the medical reports of Dr. Tchorz and Dr. Marple. *See* Defendants Rolando Carballo's and Don Alexander's Objections to Plaintiffs' Summary Judgment Appendix, Motion to Strike, and Brief in Support ("Defendants' Objections") at 2 (objecting to Plaintiffs' Appendix at 1-5). The defendants argue the medical reports are unauthenticated and constitute hearsay, and as such the reports are not proper summary judgment evidence. *See* Defendants' Objections at 2. Additionally, the defendants allege the reports fail to meet the requirements for expert testimony under FED. R. EVID. 702. *Id.* Finally, the

defendants argue that the reports are irrelevant to the issue of wrongful arrest -- the only issue before the court on this motion. *Id.*

The court agrees with the defendants that the medical reports are irrelevant to the issue being considered. See *Waggoner v. City of Garland, Texas*, 987 F.2d 1160 (5th Cir. 1993) (disregarding summary judgment evidence as irrelevant). The reports speak only to the issue of excessive force, not wrongful arrest, and thus they will not be considered. The defendants' objection to consideration of the medical reports on this motion is sustained.

### b. The Affidavit of Guadalupe Diaz

The defendants also object to the affidavit of Guadalupe Diaz in its entirety, maintaining that there is "no basis" for admitting an affidavit without a proffer that the translation was accurate, or that the unidentified translator was competent to perform the Spanish-to-English translation. Defendants' Objections at 2-3.

Citing *Cruz v. Aramark Services, Inc.*, 213 Fed. Appx. 329 (5th Cir. 2007), the defendants argue that because the affidavit does not meet the standards set out by the Fifth Circuit for treating a translator as a "conduit," the court should not consider the affidavit. Defendants' Objections at 2-3; *Cruz*, 213 Fed. Appx. at 334. In *Cruz*, the Fifth Circuit upheld the district court's decision to reject an affidavit that had been translated from Spanish to English. *Id.* Except in unusual circumstances, "an interpreter is no more than a language conduit and therefore does not create an

additional level of hearsay." *Id.* at 333 (quoting *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994)). However, in *Cruz* the Fifth Circuit explained that when "determining whether to treat a translator as a mere conduit, the [court] looks to: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." *Cruz*, 213 Fed. Appx. at 334. The plaintiffs here have submitted no information about who the translator is or what the translator's qualifications or skills are.[3] Additionally, while it seems likely that the interpreter was supplied by the plaintiffs' attorney, the court cannot be certain of this because no information regarding the translator's identity has been provided. Considering these factors, the court finds that the affidavit is not proper summary judgment evidence, and the defendants objection to it is sustained.[4]

---

[3] Diaz's affidavit states only that "I have had someone translate into Spanish the contents of this affidavit and all of the facts herein are true and correct." Affidavit of Guadalupe Diaz, *located in* Plaintiffs' Appendix at 6.

[4] While Diaz's affidavit will not be considered, the court notes that the defendants have each included in their appendices an excerpt from Diaz's sworn deposition. *See* Appendix in Support of Defendant Don Alexander's Motion for Partial Summary Judgment ("Alexander's Appendix") at 17-19; Appendix in Support of Defendant Rolando Carballo's Motion for Partial Summary Judgment ("Carballo's Appendix") at 17-19. The excerpt, identical in both appendices, provides proper evidentiary support for the facts set forth in Diaz's affidavit. The court will consider the deposition excerpt as evidence supporting Diaz's position.

### c. Deposition Testimony of Rolando Carballo

The defendants next object to the plaintiffs' inclusion of a portion of the oral deposition testimony of Carballo. *See* Defendants' Objections at 4-5. Defendants' counsel objected to the question because the question called for speculation. *Id.* The court agrees that the question calls for improper speculation and will sustain the defendants' objection and exclude that portion of Carballo's deposition from consideration. See *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.) (noting that unsupported speculation is not competent summary judgment evidence), *cert. denied*, 537 U.S. 950 (2002).

### C. Qualified Immunity to § 1983 Claims

On the basis of the summary judgment evidence provided, the court now turns to an examination of the plaintiffs' wrongful arrest claim in light of the defendants' assertions of qualified immunity.

"Qualified immunity shields an officer from suit when [ ]he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [ ]he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)); see *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The existence of qualified immunity is a policy decision which weighs the vindication of individuals' rights against society's needs for effective government. See *Elliott v. Perez*, 751 F.2d 1472, 1476-78 (5th Cir. 1985).

The need for effective government outweighs individual rights to this extent – some justified claims will necessarily be dismissed in the interest of freeing public officials "to exercise their duties and functions without fear of having their attentions distracted by the subsequent claims of unhappy or unsuccessful litigants." *Id.* at 1478.

"Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Saucier*, 533 U.S. at 206 (citing *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)). "The qualified immunity defense 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citation omitted). Government officials are entitled to the defense of qualified immunity "if their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (per curiam) (citation omitted), *cert. denied*, 511 U.S. 1019 (1994). Generally, the court is to determine as a matter of law if an officer's acts were reasonable. *Mangieri v. Clifton*, 29 F.3d 1012, 1015-16 (5th Cir. 1994); *Lampkin*, 7 F.3d at 434-35.

When determining the officers' claims of qualified immunity, this court must employ a two-step analysis. *Mace*, 333 F.3d at 623. First, this court must determine whether the plaintiffs have sufficiently pleaded facts that, if proven to be true, show that Carballo's and/or Alexander's conduct violated a clearly established

constitutional right. See *id*. Second, if the court determines that there is a constitutional violation, the court must consider whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 623-24. If the court determines that it would not be clear to a reasonable officer in Carballo's and/or Alexander's situation, the officers are entitled to immunity.

If a factual dispute exists that is material to the resolution of the questions of whether the officers acted in an objectively reasonable manner, the issue of qualified immunity may be resolved by the fact finder. *Lampkin*, 7 F.3d at 435. A motion for summary judgment on a claim of qualified immunity requires the court to "highlight evidence that, if interpreted in the light most favorable to the plaintiffs, identifies conduct by the defendant that violated clearly established law." *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004). If summary judgment is denied, the court should include in its analysis "'the factual scenario it believes emerges from viewing the summary judgment evidence in the light most favorable' to the plaintiff[s]." *Id*. at 507. By analyzing such a factual scenario, the court is not issuing a finding or opinion as to the facts surrounding the incident. Rather, the court is merely describing one potential course of events and conduct that, if proved true, would preclude the defendants' qualified immunity claims. See *id.*

D.  The Plaintiffs' Claim

1. *Wrongful Arrest*

Diaz's cause of action for wrongful arrest arises under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.  Section 1983 provides a remedy for plaintiffs who have suffered a violation of their constitutional rights.  The Fourth Amendment requires that an arrest be supported by either a properly issued warrant or probable cause.  *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).  An arrest unsupported by a properly issued warrant or probable cause is not only wrongful but also a constitutional violation.  *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir. 1985).  A warrantless arrest is unlawful and in violation of the Fourth Amendment if it is unsupported by probable cause.  *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).  Probable cause exists "when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Id.* (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)).  Therefore, the defendants are entitled to qualified immunity if a reasonable officer in their positions could have believed that, in light of the totality of the facts and circumstances of which they were aware, it was probable that Diaz had committed or was committing an offense.  See *Glenn*, 242 F.3d at 313.

The defendants argue that there was probable cause to arrest Diaz for the offense of evading detention or arrest.[5] *See* Carballo's Brief at 7; Alexander's Brief at 7. It is not necessary that the defendants demonstrate probable cause for the arrest of assault on a public servant -- the *actual* offense Diaz was arrested for. See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that a warrantless arrest is justified where the facts known to the officer provide probable cause to believe a crime has been committed, even where the offense charged is not closely related to the offense for which the officer has probable cause). Therefore, it is only necessary that the defendants show probable cause to arrest Diaz for any offense, in this instance, evading arrest or detention. Under Texas law, a peace officer is allowed to effect a warrantless arrest where the officer has probable cause to believe that the arrestee has committed an offense "in his presence or within his view." TEX. CODE CRIM. PROC. § 14.01(b) (Vernon 2005).

Viewing the facts in a light most favorable to the plaintiffs and based on the totality of the circumstances within the defendants' knowledge, the court finds that the defendants had probable cause to arrest Diaz for the offense of evading arrest or detention. The defendants were responding to a 9-1-1 call by Cipriano at a very late hour, and were directed by Cipriano to investigate the poorly lit area along the fence

---

[5] EVADING ARREST OR DETENTION. (a) A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (Vernon 2003).

line at the rear of the Cipriano's property. *See* Carballo's Brief at 7; Alexander's Brief at 7. Diaz argues that there is a fact issue regarding the events, but even if his version is taken as true, both Carballo and Alexander would have had probable cause to arrest him for fleeing the scene in his truck. As the Fifth Circuit noted in *United States v. Alexander*, 559 F.2d 1339, 1343 (5th Cir. 1977), *cert. denied*, 434 U.S. 1078 (1978), "[t]he observation of unusual activity for which there is not a legitimate, logical explanation can be the basis for probable cause." Moreover, "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969 (1977). Here, as the situation appeared to the defendants, taking into consideration the 9-1-1 call, the late hour, the fact that the incident took place in a dark alley, and that the defendants did not know the property was owned by Diaz, the court finds that Carballo and Alexander had probable cause to arrest Diaz for evading arrest or detention.

Therefore, because the plaintiffs have not demonstrated a constitutional violation for wrongful arrest, the defendants are entitled to qualified immunity on this claim and their motions for partial summary judgment must be granted.

## III. CONCLUSION

For the reasons stated above, the defendants' objections to the plaintiffs' summary judgment evidence are **SUSTAINED**, and the defendants' motions for partial summary judgment are **GRANTED**.

**SO ORDERED**.

October 12, 2007.

A. JOE FISH
CHIEF JUDGE